WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katinka Hosszu, | No. CV-15-02285-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Casey Barrett, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss by Defendants. (Doc. 26.) For the following reasons, the Court grants the motion.

**BACKGROUND**

Katinka Hosszu ("Hosszu") is a world-famous professional swimmer. (Compl. ¶ 4.) A three-time[1] Olympian, five-time World Champion, and Hungarian Sportswoman of the Year, Hosszu enjoys a generous backing from corporate and athletic equipment sponsors. (*Id.*) She has a large fan base and is a national source of pride for her native Hungary. (*Id.*)

On May 20th, 2015, former Olympic swimmer and swim commentator Casey Barrett posted an article entitled *The Smell of Smoke* on his blog, Cap & Goggles, and Swimming World Magazine ("SWM") published a substantially similar version of his article entitled *Are Katinka Hosszu's Performances Being Aided?* (collectively, "the May

---

[1] Hosszu was a three-time Olympian when she filed her Complaint; she is now a four-time Olympian. Although Hosszu has garnered additional successes since the filing of the Complaint, this Order relies on the facts as alleged.

20th article").[2] (Compl. ¶ 32.) Hosszu alleges that the May 20th article published false "assertions of fact" which accuse her of using performance-enhancing drugs to achieve her success. (Compl. ¶ 33, 48.)

However, both parties stipulate that Barrett repeatedly conceded in the May 20th article that he did not have any proof, such as failed drug tests, to demonstrate that Hosszu ever used performance-enhancing drugs. Instead, Hosszu alleges that the May 20th article accuses her of using performance-enhancing drugs by discussing her remarkable comeback after the 2012 Olympic Games, as well as her unusual ability to recover quickly in between events.

Hosszu further alleges that on August 3, 2015, Barrett published an article entitled *Women Rule the Worlds*, which republished the May 20th article's defamatory statements. (Compl. ¶ 44.) Hosszu further claims that Barrett and SWM collaborated to publish at least two other articles entitled *Doping: How to Not Get Caught* and *Suspicious Minds and the Doping Rumor Mill* about performance-enhancing drug abuse which are "reasonably understood to refer to Hosszu." (Compl. ¶ 45.)

Hosszu alleges that Barrett, SWM, and Does 1-20 ("Defendants") harmed her reputation and caused the public and others to hold her in contempt. (Compl. ¶ 49.) She claims that sponsors discontinued backing her, that she has been subjected to heightened drug testing, and that she is questioned about the "doping allegations" at every interview. (Compl. ¶¶ 38–39.) Hosszu brings claims for defamation and false light.

**DISCUSSION**

**I.   Legal Standard**

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to state a claim to

---

[2] The Court grants Defendants' Request for Judicial Notice for Exhibits 1–7 (Doc. 27). *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (extending the doctrine of incorporation to "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint"). However, the Court denies Defendants' Request for Judicial notice for Exhibits 8–33 (Doc. 27) because the complaint does not rely upon these documents. *Id.*

relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**II.    Analysis**

"[T]o survive [a] motion to dismiss, [a plaintiff] must not only establish that the [statements] about which [she] complain[s] are reasonably capable of sustaining a defamatory meaning, [she] must also show that they are not mere comment within the ambit of the First Amendment." *Knievel v. ESPN*, 393 F.3d 1068, 1073–74 (9th Cir. 2005) (internal citation omitted). "Although defamation is primarily governed by state law, the First Amendment safeguards for freedom of speech and press limit state law." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). "The scope of constitutional protection extends to statements of opinion on matters of public concern that do not contain or imply a provable factual assertion." *Id.* (citing *Milkovich v. Lorain J. Co.,* 497 U.S. 1, 20 (1990)). Because "expressions of 'opinion' may often imply an assertion of objective fact," there is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich,* 497 U.S. at 18. For example, "[i]f a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.* "'Simply couching such statements in

terms of opinion does not dispel [the false, defamatory] implications' because a speaker may still imply 'a knowledge of facts which lead to the [defamatory] conclusion.'" *Partington v. Bugliosi*, 56 F.3d 1147, 1152-53 (9th Cir. 1995) (quoting *Milkovich,* 497 U.S. at 19).

"A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* at 1156. "[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Id.* at 1156-57.

"[T]he threshold question in defamation suits is . . . whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (internal quotations omitted). "If the answer is no, the claim is foreclosed by the First Amendment." *Partington*, 56 F.3d at 1153. The Ninth Circuit has "adopted a three-part test" as a "starting point" for this analysis: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* (citing *Unelko*, 912 F.2d at 1053). Courts should consider the "totality of the circumstances." *Knievel*, 393 F.3d at 1074. The Court examines "the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside of the protection of the First Amendment." *Partington*, 56 F.3d at 1153.

Here, Barrett stated in the first sentence of the May 20th article that "there is no proof" that Hosszu is aiding her performances with drugs. (Doc. 27-1 at Ex. 1, PDF 2.) Barrett based his conclusion on facts about Hosszu's recent achievements, her unusual ability to recover in between races, and her body type changes. (Doc. 27 at Ex. 1, 2, 7.) Barrett outlined the facts available to him, and Hosszu does not dispute the truth of those facts. The May 20th article states that "[n]o one competes, consistently, at a higher level than [Hosszu] does," and adds that "[h]er consistency, her ability to recover, and her never-flagging form continues [sic] without breakdown, regardless of when or where the race is going down." (Doc. 27-1 at Ex. 1, PDF 3.) Barrett illustrated this general observation by detailing Hosszu's performance at the Charlotte Arena Pro Swim Series the weekend before the May 20th article's publication:

> Hosszu raced in seven individual events. She won six: the 200 free and the 400 IM on day one; the 200 fly and 100 back on day two (along with a why-not 9th in the 400 free); and the 200 IM and 200 back on day three. It was that last double on the third day that caught many eyes. Within a sixteen minute span, Hosszu posted the top time in the world this year in the 200 IM (2:08.66) and returned after a gasp of a warm-down later with a 200 back in 2:07.79, the third fastest time on earth this year.

(*Id.*) Barrett contrasted Hosszu's performance with the "very tired, in-training swims" of "most of the superstars in attendance." (*Id.*)

From there, Barrett stated that "past signposts point down some dark roads" and briefly summarized a documentary he is writing about the 1976 Olympics, when an East German team used performance-enhancing drugs. Barrett stressed that a "driving narrative" of the film is "the failure of the press to speak up in the face of such obvious corruption." (*Id.*) According to Barrett, although the East German team was "delivering performances that could not be explained by any rational observer," very few commentators voiced their suspicions that the athletes were aiding their performances with drugs because "there was no proof." (*Id.*) Barrett then claimed to have voiced suspicions that Lance Armstrong was using drugs before there was proof of Armstrong's drug use, noting that this "continues to happen, in every sport, every time there's a

- 5 -

champion who stretches plausible achievement in ways that don't quite pass the bullshit test for anyone paying attention." (*Id.*)

Barrett conceded that his suspicions about Hosszu could be wrong, and stated that he hopes they are. (*Id.*) But then he provided a few more facts to support his suspicions. In the 2012 London Olympics, Hosszu placed 4th in her signature event, the 400 IM. (*Id.* at PDF 4.) Hosszu stated in an interview that she "gave up" during the event because her spirit was shattered by the swimmer who won the event. (*Id.*) According to Barrett, there was "outraged talk . . . some of it bordering on xenophobic" that the winner of the event—Ye Shiwen of China—must have been using performance-enhancing drugs. (*Id.*) After outlining these facts, Barrett questioned whether Hosszu might have suspected that the swimmer who defeated her had been doping. He ended the article by sharing a generalization he claimed to have learned while producing his documentary: "There is one prerequisite for athletes who dope: They must convince themselves that their competition is doing it. That is the only thing that can validate crossing this line."

In light of Barrett's concessions that he has "no proof," that all he has is "suspicions," which may be "wrong,"[3] and in light of his detailed explanation of how non-contested facts gave rise to his suspicions, (*id.* at PDF 2-4), no "reasonable factfinder could conclude that the statements imply a false assertion of objective fact." *Partington*, 56 F.3d at 1153. Rather, it is clear to the reader "that the challenged statements represent [Barrett's] own interpretation of [the non-contested] facts" and that the reader is "free to draw his own conclusions." *Id.* at 1156-57.

Additionally, "the general context in which the statements were made negates the impression that they imply a false assertion of fact." *Partington*, 56 F.3d at 1154. First, SWM's version of the May 20th article clearly designated the content as "commentary" in three separate places: (1) at the beginning of the article after the title, (2) at end of the article, where SWM included a link to a press conference where Hosszu denied the

---

[3] In the version of the May 20th article published on Barrett's blog, he further stated, "[T]o any litigious minded folks out there – I realize I'm trafficking in currently unprovable conjecture." (Doc. 27-1 at Ex. 2, PDF 8.)

- 6 -

1   "commentary," and (3) at the end of the text in an italicized notice to the reader that the
2   "commentary" contained opinion of the author and not SWM.[4]  (Doc. 27 at Ex. 1.)  The
3   other version was posted on a blog, a form of media known for containing personal
4   opinion and commentary.  *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-
5   5696 CRB, 2013 WL 3460707, at *4 (N.D. Cal. July 9, 2013) ("[S]tatements made on a
6   personal blog are less likely to be viewed as statements of fact."); *Obsidian Fin. Grp.,*
7   *LLC v. Cox*, 812 F. Supp. 2d 1220, 1223 (D. Or. 2011), *aff'd,* 740 F.3d 1284 (9th Cir.
8   2014) ("[B]logs are a subspecies of online speech which inherently suggest that
9   statements made there are not likely provable assertions of fact."); *see also Partington,*
10  56 F.3d at 1154 ("[S]tatements are protected in part because the format in which they are
11  found is 'the type of article generally known to contain more opinionated writing than the
12  typical news report.'" (quoting *Phantom Touring v. Affiliated Publ'ns,* 953 F.2d 724, 729
13  (1st Cir. 1992))).  Further, the May 20th article employed a highly informal writing style
14  more commonly associated with personal commentary than news reporting.  *Cf.*
15  *Underwager*, 69 F.3d at 367 ("[S]ome of the language on the tape and at the seminar was
16  colorful, figurative rhetoric that reasonable minds would not take to be factual.").

17         Nonetheless, this is not a case in which the author was penning satire, attempting
18  to be humorous, or otherwise creating a message that was not meant to be taken
19  seriously.  *Cf. Knievel*, 393 F.3d at 1077-78.  Despite the colorful language, Barrett
20  intended his audience to seriously consider the question he was raising – whether Hosszu
21  might be enhancing her performances with drugs.

22         There is one more factor for the Court to consider:  "whether the statement in
23  question is susceptible of being proved true or false."  *See Partington*, 56 F.3d at 1153.
24  First, the Court must determine what the statement in question here *is*.  Barrett never
25  stated in the article that Hosszu has ever used performance-enhancing drugs, and (as is

---

[4] Hosszu alleges that at least one of these designations was added after SWM's initial publication of the May 20th article. (Doc. 1 at ¶ 42.)  However, even if the article had not been explicitly labeled "commentary," the discussion above establishes that a reasonable reader would recognize that Barrett was expressing suspicions and conjecture, not assertions of fact.

- 7 -

discussed above) his explicit caveats and his fair review of the facts on which his suspicions are grounded negate the possibility that he was affirmatively asserting as a fact that she has done so.  He did not explicitly state—but he clearly implied—that he believes that Hosszu's performances should raise strong suspicions that she is using performance-enhancing drugs, and that he believes commentators should speak out about such suspicions.  Such a "statement" is not an assertion of fact.   It is a personal opinion that is not susceptible of being proved true or false.

For all of the above reasons, Barrett's statements in the May 20th article are protected by the First Amendment:

> When, as here, an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment. Otherwise, there would be no room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public. Instead, authors of every sort would be forced to provide only dry, colorless descriptions of facts, bereft of analysis or insight. There would be little difference between the editorial page and the front page, between commentary and reporting, and the robust debate among people with different viewpoints that is a vital part of our democracy would surely be hampered.

*Partington*, 56 F.3d at 1154.

Hosszu's claims based on the August 3, 2015 publication of Barrett's article *Women Rule the Worlds* allege that this second article republished the May 20th article's statements and reconfirmed Barrett's continued belief in the sentiments expressed in the May 20th article.  (Doc. 1 at ¶ 44.)  Because the May 20th article is protected by the First Amendment, so too is *Women Rule the Worlds*.

Hosszu's false light claims based on the May 20th and *Women Rule the Worlds*

1  articles fail for the same reason her defamation claims fail: "both statements are
2  protected by the First Amendment, regardless of the form of tort alleged." *Partington*, 56
3  F.3d at 1160. Therefore, Defendants' Motion to Dismiss regarding these two articles is
4  granted.

5  Hosszu also based defamation and false light claims on two other articles, *Doping:*
6  *How Not to Get Caught* and *Suspicious Minds and the Doping Rumor Mill*. She alleges
7  that these articles "specifically argue that the absence of a positive drug test is not
8  tantamount to factual innocence of performance-enhancing drug abuse." (Doc. 1 at ¶ 45.)
9  Hosszu fails to allege that this statement is false, and as such, the claims based on these
10 articles fail.[5]

11  Moreover, in Arizona, "defamatory statements must be published in such a
12 manner that they reasonably relate to specific individuals." *Hansen v. Stoll*, 130 Ariz.
13 454, 458, 636 P.2d 1236, 1240 (Ct. App. 1981) (*citing Rosenblatt v. Baer*, 383 U.S. 75
14 (1966)). "While the individual need not be named, the burden rests on the plaintiff to
15 [allege] that the publication was 'of and concerning' [her]." *Id*.

16  Hosszu alleged that these articles were "on the subject of performance-enhancing
17 drugs abuse, both of which are reasonably understood to refer to Hosszu." (Compl. ¶ 45.)
18 However, while it is not necessary for Hosszu to allege that every reader could make the
19 connection between the article in question and herself, the "connection must be
20 reasonable under the circumstances." *Hansen*, 130 Ariz. at 459, 636 P.2d at 1241 (citing
21 Restatement (Second) of Torts § 564 (1977)). These articles never mention Hosszu.
22 Instead, they discuss the use of performance-enhancing drugs in the swimming
23 community as a whole. (*See* Doc. 27 at Ex. 3–6.) "If the group [of defamed persons] is
24 so large, or the statements so indefinite, that the objects of the defamatory statements
25 cannot be readily ascertained, the statements are not actionable." *Hansen*, 130 Ariz. at
26 458, 636 P.2d at 1240. Moreover, both parties stipulate that Barrett is a known

---

[5] Because the claims fail on this ground, the Court will not analyze whether they are also protected under the First Amendment.

commentator on the topic of performance-enhancing drug use in professional swimming. (Compl.¶ 26; Doc. 26 at 4, 9). Thus, if anything, these articles propose a broad view on an issue of public concern, rather than targeted assertions of fact which readers could reasonably understand to be of and concerning Hosszu.

Thus, Hosszu's defamation claims based on *Doping: How Not to Get Caught* and *Suspicious Minds and the Doping Rumor Mill* fail. Hosszu's false light claims based on these articles fail for the same reason her defamation claims fail: a false light claim must be "of and concerning" the plaintiff. *Reynolds v. Reynolds*, 231 Ariz. 313, 318, 294 P.3d 151, 156 (App. 2013).

### III. Leave to Amend

"[L]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Levine v. Safeguard Health Enter., Inc.*, 32 F. App'x 276, 278 (9th Cir. 2002) (citing *Bly–Magee v. Cal.,* 236 F.3d 1014, 1019 (9th Cir. 2001)). Here, the pleading cannot be cured by alleging additional facts.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 26) is **GRANTED**. All claims are dismissed with prejudice. The Clerk of Court is directed to enter judgment accordingly.

Dated this 12th day of August, 2016.

_____
Honorable G. Murray Snow
United States District Judge

- 10 -